UNDERWOOD *v.* MCDUFFEE.

## George W. Underwood v. David McDuffee.

*Referee, oath of: Judicial power: Stipulation.* A referee is not such an "officer" within the meaning of the constitution as requires him to be sworn before assuming his duties. *Const. Art.* 18, § 1. And, when testimony in a cause is submitted to such referee by stipulation, his action thereon is not in any sense judicial.—*Const. Art.* 6, § 1.

*Held* further, that the judicial power in the constitutional sense is not exercised by a referee in determining facts in a cause submitted to him, but by the court in giving judgment.

*Amendment of statute: when valid.* Where in a revision of the same subject matter the legislature substitutes one section for another, if the new section be not foreign to the subject matter indicated by the title of the law in which it is inserted, it is not invalid because it substitutes entirely new provisions, inconsistent with the old.

The constitution requires all statutory provisions to conform to the title of the act; but, while it requires all amended sections to be published at length, it imposes no other limitations upon the nature of amendments.

*Heard May 3d. Decided May 14th.*

Error to Hillsdale Circuit.

This was an action of assumpsit. After issue joined, the cause was referred by stipulation to a referee; and who found for the plaintiff.

A bill of exceptions was signed, and exceptions were taken to the referee's report. Both were overruled by the Circuit Court and the report was confirmed. The cause was removed to this court by writ of error.

*Newberry* and *Pond*, for plaintiff in error.

1. The person appointed referee had no authority to act as such until sworn, and not having been sworn, the proceedings before him were without jurisdiction, and hence, the judgment based upon his report is erroneous.

   *a.* By the common law all officers of justice are required to be sworn.—34 *Vt.* 517, 524.

   *b.* The constitution of this state expressly provides that all officers, executive and judicial, shall, before they enter

upon the duties of their respective offices, take and subscribe an oath provided.—*Const. Art.* 18, § 1; 1 *Comp. L.* 73.

A referee we submit is an officer within the meaning of this provision, and he is not exempted by any law from taking the oath. When the law requires a person appointed to office to be sworn before entering upon the duties of the office he does not become an officer until sworn. 34 *Vt.* 517. The proceedings before the referee and his report were, therefore, a nullity, and no judgment should have been entered upon such report.— 8 *Vt.* 396.

2. The act under which the case was referred is unconstitutional, and hence all proceedings under said reference are void.

It is unconstitutional in that it undertakes to create a judicial officer unknown to and unauthorized by the constitution.

*a.* The constitution vests the entire judicial power in certain courts named, in justices of the peace, and in certain specified officers.— *Const. Art.* 3, § 1; *Id. Art.* 6, §§ 1, 2, 16 *and* 23.

It also designates the judicial officers who shall constitute the courts named; that is, by whom the judicial power vested in the several courts shall be exercised. *Const. Art.* 6, §§ 1, 2, 6, 7. 13, 17, 23 *and* 27. It limits the number of justices of the peace to four for each township. *Art.* 6, § 17. It provides for a limited number of officers of a judicial character, not strictly officers of either of the courts, upon whom judicial power may be conferred, and prescribes the nature of such powers.—*Art.* 6, § 16.

It is evident from these provisions, that it was the intention of the framers of the constitution not merely to invest the entire judicial power in certain officers and courts named, and leave the legislature to provide for the exercise of the judicial powers vested in the courts through or by such judicial officers as it might from time to time

prescribe, but to designate the officers through or by whom such powers should be exercised.—5 *Mich.* 409; 14 *Ill.* 419; 34 *Id.* 358.

The legislature can not provide that any Circuit Court may have more than one judge, or for the election or appointment of any person either as an officer or *attaché* of a court existing under the constitution, or otherwise, in addition to those named in the constitution, to exercise any of the judicial powers vested by the constitution in the courts and officers therein named.—5 *Mich.* 409; 4 *Green, Iowa,* 104.

The act in question does this; a referee appointed under it, exercises, in relation to the case in which he is appointed, a portion of the' judicial power vested in the court.

It provides for a trial of the cause before a referee, to be conducted in the same manner as a trial by the court. His report may be filed in vacation or in term, and judgment may be entered thereon as if the case had been tried by the court.—*Laws,* 1861, *p.* 158, §§ 5, 6, 8, 10.

The only answer that will or can be suggested to this position, is that the judicial acts thus performed by the referee have no effect until adopted by, and made the acts of, the court. 5 *Minn.* 78; 32 *Mass.* 148. This is not true. Many of the judicial acts the referee performs in the trial of the cause never do or can come before the court for review. The finding of the facts is a judicial act, and such finding is as conclusive as, if not more conclusive than, the verdict of a jury.—14 *Mich.* 152.

That the reference was by stipulation of the parties does not render the proceedings valid. The parties can not by consent create a court or a judicial officer whose proceedings can be recognized as valid.—3 *Green* (*Iowa*) 458; 4 *Id.* 120.

It is also unconstitutional because the new sections purporting to amend the old are not really amendments, but

substitute provisions in no way resembling the former ones. — *Const. Art.* 4, §§ 20, 25.

We submit that the judgment should be reversed.

*D. L. Pratt*, for defendant in error.

1. After stipulating to try the cause before a referee, and after proceeding to the trial of the cause, and after the evidence was all put in on both sides, it was too late for defendant to object to the jurisdiction of the referee.

2. No oath is now required of the referee.

Section 4192 of the Compiled Laws required referees to be sworn. That section was repealed.—*Laws of* 1861, *p.* 158.

Referees are not judicial officers, and are not required to take the official oath. — 1 *Burrill's Prac.* 435 ; 1 *Johns.* 314 ; 12 *Id.* 129, 218.

Judicial officers have power to hear, try and determine questions submitted to them. — 2 *Burr. Law Dic.* 108, 2*d edition.*

Referees have only power to hear, try and report to the court the facts found and the conclusions of law, and if the report is confirmed by the court, it stands as the finding of the court, and judgment is rendered thereon in the same manner as if the action had been tried by the court. — *Laws of* 1861, *pp.* 159, 160.

If referees are required to take the official oath, why are not arbitrators, auditors, commissioners of estates, and other persons appointed for a temporary purpose?

If those officers are required to take the official oath, then the law requiring them to take any other oath is unconstitutional.

Section one, of article eighteen, of the constitution, says: "And no other oath, declaration or test, shall be required as a qualification for any office or public trust."— *See* §§ 4192, 4198, 5158, 2925, *of the Compiled Laws, for the*

*oaths required of referees, auditors, arbitrators and commissioners of estates.*

3. The referee did not exercise judicial powers contrary to the constitution. He was not a judicial officer. He had no power "to hear and determine" any question of law or fact. — 5 *Mich.* 417, 419.

Circuit courts had power to refer cases to referees before the present constitution was adopted. By section one, article six, of the constitution, the same judicial powers were vested in circuit courts that they then exercised. — 7 *Mich.* 341.

4. The referee is not required to report the evidence; only the facts found. — *Laws* 1861, *p.* 159.

*C. Kent,* on same side.

1. The referee need not be sworn, because not an officer within the meaning of the constitutional provision requiring all officers to take a certain oath. He is a temporary officer of the court for certain purposes, but has no office. There is less reason why he should take the oath than there is that a juryman should do so.

If he be an officer, then his acts are valid as to third parties without the oath.

2. If the referee exercise judicial power at all, the power exercised is no more judicial than that of a jury, a clerk of court in taxing costs, or commissioners on estates.

The referee is part of the circuit court. The judicial power is conferred on the circuit court, including therein the judge and all the usual instruments of the court, including clerk, jury and referees. A referee law confining judicial power, if the present one does, was in existence when our constitution was formed. No fault had been found with it, and it is not supposable that the constitutional convention intended to make such a law unconstitutional by mere implication.

Only one case directly in point is to be found, and that arose in Minnesota, whose constitution is like ours so far as the subject is concerned. That decision is directly in favor of the views I maintain. — 5 *Minn.* 73.

2. Our constitution does not differ, so far as this question is concerned, from those of two-thirds of the states, and in nearly all of them either referee or arbitration laws, as objectionable as ours, have long existed. The court will not hold this law unconstitutional on any doubtful grounds.

3. If the referee law be unconstitutional, still the parties in this case are bound by their stipulation. The acts of the referee are good by virtue of the stipulation, if not under the law. The law under which the referee acted became, in substance, a part of the stipulation.

CAMPBELL J.

In this case, the parties in the court below consented to a reference of the matters put in issue by the pleadings to a referee of their own nomination, who heard the case and made his report. Exceptions were taken to it, which were overruled, and judgment was entered on the finding. The cause is now brought before this court on questions chiefly relating to the validity of the reference, and the authority of the referee.

It is first objected that the referee was not sworn. The statute does not require this, but it is claimed that the constitution of this state requires all executive and judicial officers to be sworn, before they assume their duties. — *Const. Art.* 18, § 1. The oath required is the oath of allegiance to the United States and to the state, and an oath to perform faithfully the duties of the office. The term "*officer,*" as there used, can only be taken to refer to such offices as have some degree of permanence, and are not created by a temporary nomination for a single and transient purpose. A designation of a person to do

some one act of duty, with no official tenure except as incident to that transitory function, can not make him a public officer, without involving a great absurdity. Every public office includes duties which are to be performed constantly, or as occasion arises, during some continuous tenure. And no public office can depend upon the will of private persons, who may call it into existence for their own purposes, and at their own pleasure. In the proceedings under consideration, a referee is appointed only when parties consent, or waive their right to a jury, and the designation may be made by their private stipulation, and is confined to the particular suit. We have no difficulty in holding that such a referee can not be within the operation of the constitution as an officer of any kind.

It is also urged that the statute creating the existing system of references is invalid as not in any proper sense an amendment of the prior statutes, although purporting to be such. The constitution declares that no law shall be amended or altered by reference to its title only, but that the sections altered or amended ".shall be re-enacted and published at length." The law in question was designed to remodel the entire system of references, and in lieu of several sections of the former statutes, a series of new sections was adopted, each in the room of an old one. The objection pointed out is, that some of the new sections bear no resemblance to those superseded, but relate to a different class of details. We can see no illegality in this. There is no principle which can prevent the legislature from substituting any provision they please for any other provision, whether cognate or not, if the new section is not foreign to the subject indicated by the title of the law in which it is inserted. There is no other constitutional check that we have been able to discover, and in the absence of any, it certainly belongs to the legislative power to exercise its discretion in the matter.

The principal objection to these proceedings is claimed to be found in the clauses of the constitution which vest all the judicial power of the state in courts, and which provide how those courts shall be constituted, and, as is argued, leave no room for judicial action elsewhere. The judicial power, even when used in its widest and least accurate sense, involves the power to "*hear and determine*" the matters to be disposed of; and this can only be done by some order or judgment which needs no additional sanction to entitle it to be enforced. No action which is merely preparatory to an order or judgment to be rendered by some different body, can be properly termed judicial. A master in chancery often has occasion to consider questions of law and of fact, but no one ever supposed him to possess judicial power. A jury in a court of record determines all the facts in the case, but the judicial power is in the court which enforces the verdict by judgment. This view is very clearly explained by Kent C. J. in *Tillotson v. Cheetham*, 2 *Johns.* 63, where it was held that the sheriff himself, when presiding over a jury of inquest, acted ministerially, because he had no power to give judgment. See, also, *Story on Const.* § 1640 *and seq.; Daniels v. People*, 6 *Mich.* 381; *Chandler v. Nash*, 5 *Mich.* 409. It is the inherent authority not only to decide, but to make binding orders or judgments, which constitutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on persons or things only through its action, and by virtue of it.

Our constitution, in ordinary civil cases, dispenses with a jury unless demanded. The facts, therefore, must usually be settled by other than common-law means. The cause may be, and in most cases will be, heard by the court itself upon facts and law, and we are not now required to consider how far this right may be restricted. But

it is unquestionably within the power of the parties to stipulate upon the facts, or for the amount of judgment, and thus save the court the labor of determining anything but the law, or even of doing anything beyond entering the judgment.  This substitution of the private agreement for the verdict can not be seriously claimed to be an invasion or usurpation of judicial functions.  Should the parties even agree that certain facts would appear if certain testimony were admissible, and by their stipulation submit the cause upon more than one hypothesis, according as certain proofs should be received or rejected, there would certainly be no such usurpation.  This statute does nothing more, in reference to preparing facts for submission to the judgment of the court, than if the parties themselves determined them by stipulation.  Instead of doing this, they agree that they will allow a common agent or arbiter to examine into the facts, and present his various conclusions, and, if required, the means and principles whereby he was enabled to arrive at them.  They accept the machinery provided by the statute, in lieu of imposing any conditions of their own devising.  The court receives the conclusions of this arbiter of the parties, gives each of them an opportunity of showing whether he has kept within the rules of the authority conferred upon him, in receiving or rejecting evidence, or in any other action, and, if satisfied he has complied with his duty, gives judgment accordingly. We can perceive no difference in law between an agreement that a fact exists and an agreement that the determination of a chosen umpire shall decide upon its existence. The conclusion in either case is the result of a stipulation, in one instance acting directly, and in the other by an intermediate agency.

When this common agent has performed his duty, and submitted his conclusions to the court, then the judicial power is exercised upon all that the parties have seen fit to leave to its action, by giving a binding judgment such

as in law is warranted by this finding. But, until this judgment is given, it has precisely the same force as if the parties had joined in a written stipulation, embracing the findings of the referee and the statutory provisions determining what effect should be given them. No one has ever questioned the power of the legislature to allow judgments by confession; and if such judgments, where the parties settle their own conclusions, do not infringe the judicial power, we can see no more reason for objection to references, where the consent of the parties is a condition precedent to the proceedings.

We are not required in this case to consider whether any, and if so, what, compulsory authority might be granted to referees *in invitum*. No party who has consented to their appointment can object to their conclusions except where they violate the rules of law; and then he must follow the statute which he has by his own consent made the rule of proceeding.

We do not think the constitution prevents such references by consent. And we think there is no error in the proceedings. The judgment must be affirmed, with costs.

The other Justices concurred.